UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| ALFREDA LUNDY | CIVIL ACTION |
| VERSUS | 22-930-SDD-RLB |
| DG LOUISIANA, LLC d/b/a DOLLAR GENERAL, and DOLGENCORP LLC d/b/a DOLLAR GENERAL | |

## RULING

This matter is before the Court on the *Motion for Summary Judgment*[1] filed by Defendants DG Louisiana, LLC, and Dolgencorp, LLC, both doing business as Dollar General (collectively referred to as "Dollar General"). Plaintiff Alfreda Lundy ("Plaintiff") filed an *Opposition*,[2] to which Dollar General filed a *Reply*.[3] For the reasons that follow, the *Motion* will be denied.

### I.     BACKGROUND

This is a trip-and-fall case. Plaintiff filed her original Petition for Damages in Louisiana state court (18th Judicial District Court) against Dollar General and Melody Goldman ("Goldman"), a Dollar General employee who was allegedly present at the time of the incident.[4] About ten months later, Plaintiff filed a Supplemental and Amended Petition in which she added Coca-Cola Bottling Company United, Inc. ("Coca-Cola") and Ace American Insurance Company ("Ace") as defendants.[5]

---

[1] Rec. Doc. 38.
[2] Rec. Doc. 41.
[3] Rec. Doc. 47.
[4] Rec. Doc. 4-1, pp. 1–5.
[5] *Id.* at pp. 6–10.

Coca-Cola and Ace removed the action to this Court alleging the existence of diversity subject matter jurisdiction under 28 U.S.C. § 1332.[6] Plaintiff filed a Motion to Remand, claiming Goldman's presence in the action defeated complete diversity.[7] Coca-Cola and Ace argued that Goldman's citizenship should be ignored because she was an improperly joined defendant.[8] Magistrate Judge Richard L. Bourgeios, Jr., found that Goldman was improperly joined as a defendant, recommending denial of Plaintiff's Motion to Remand and dismissal of the claims against Goldman without prejudice.[9] The Court adopted the Magistrate Judge's Report and Recommendations.[10] Later, Plaintiff settled her claim against Coca-Cola and Ace.[11] At this juncture, Plaintiff's claims remain only against Dollar General.

Plaintiff alleges she "was injured when she tripped due to a hazardous and dangerous condition created by" Dollar General.[12] Plaintiff claims she went to a Dollar General store in Addis, Louisiana, intending to purchase a can of Lysol.[13] After realizing there was no Lysol in the store, Plaintiff went to the front counter and asked Goldman where she might find iPhone chargers.[14] Goldman offered to show Plaintiff where the iPhone chargers were located.[15] Plaintiff followed Goldman through the store and, as she

---

[6] Rec. Doc. 1.
[7] Rec. Doc. 10.
[8] Rec. Doc. 15.
[9] Rec. Doc. 18.
[10] Rec. Doc. 23.
[11] Rec. Doc. 68.
[12] Rec. Doc. 4-1, ¶ 4.
[13] Rec. Doc. 41, p. 2.
[14] *Id.*
[15] *Id.*

rounded the corner of an aisle, tripped and fell onto the floor.[16] After the fall, Plaintiff noticed a crate "with white Coca-Cola lettering" on the floor around where she tripped.[17]

Although she did not notice the crate until after her fall, Plaintiff claims that she tripped over the crate. Plaintiff claims that "the empty crate was partially hidden under a small table with merchandise on top" and that "part of the crate protruded into the aisle."[18] Plaintiff argues the location and position of the crate created a dangerous tripping hazard for which Dollar General is liable. Dollar General moved for summary judgment, denying liability.

## II. LAW AND ANALYSIS

### A. Summary Judgment Standard

In reviewing a party's motion for summary judgment, the Court will grant the motion if (1) there is no genuine issue of material fact, and (2) the mover is entitled to judgment as a matter of law.[19] This determination is made "in the light most favorable to the opposing party."[20] "When seeking summary judgment, the movant bears the initial responsibility of demonstrating the absence of a genuine issue of material fact with respect to those issues on which the movant bears the burden of proof at trial."[21] If the moving party satisfies its burden, "the non-movant must respond to the motion for summary judgment by setting forth particular facts indicating that there is a genuine issue

---

[16] *Id.*
[17] *Id.*
[18] *Id.*
[19] FED. R. CIV. P. 56(a).
[20] *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157 (1970) (citing *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962); 6 V. MOORE, FEDERAL PRACTICE 56.15(3) (2d ed. 1966)).
[21] *Transamerica Ins. Co. v. Avenell*, 66 F.3d 715, 718 (5th Cir. 1995) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 333–34 (1986)).

for trial."[22] However, the non-moving party's burden "'is not satisfied with some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence.'"[23]

Notably, "[a] genuine issue of material fact exists, 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"[24] All reasonable factual inferences are drawn in favor of the nonmoving party.[25] However, "[t]he Court has no duty to search the record for material fact issues. Rather, the party opposing the summary judgment is required to identify specific evidence in the record and to articulate precisely how this evidence supports his claim."[26] "Conclusory allegations unsupported by specific facts . . . will not prevent an award of summary judgment."[27]

### B. Applicable Law

In this diversity case, state substantive law controls.[28] "Louisiana's Merchant Liability Statute, La. R.S. 9:2800.6, [ ] governs negligence claims arising from a fall due to a condition on a merchant's premises."[29] The statute provides that "[a] merchant owes a duty to persons who use his premises to exercise reasonable care to keep his aisles, passageways, and floors in a reasonably safe condition. This duty includes a reasonable effort to keep the premises free of any hazardous conditions which reasonably might give

---

[22] *Byers v. Dallas Morning News, Inc.*, 209 F.3d 419, 424 (5th Cir. 2000) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248–49 (1986)).
[23] *Willis v. Roche Biomedical Lab., Inc.,* 61 F.3d 313, 315 (5th Cir. 1995) (quoting *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir. 1994)).
[24] *Pylant v. Hartford Life and Accident Ins. Co.*, 497 F.3d 536, 538 (5th Cir. 2007) (quoting *Anderson*, 477 U.S. at 248)).
[25] *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985).
[26] *RSR Corp. v. Int'l Ins. Co.*, 612 F.3d 851, 857 (5th Cir. 2010) (citing *Ragas v. Tenn. Gas Pipeline Co.,* 136 F.3d 455, 458 (5th Cir.1998)).
[27] *Nat'l Ass'n of Gov't Emps. v. City Pub. Serv. Bd. of San Antonio, Tex.*, 40 F.3d 698, 713 (5th Cir. 1994).
[28] *Erie R. Co. v. Thompkins*, 304 U.S. 64 (1938).
[29] *Expose v. Rouses Enterprises, LLC*, 2023-0587 (La. App. 4 Cir. 5/7/24), 2024 WL 2012326, at *3.

rise to damage."[30] The statute also specifies the requirements for a merchant liability claim as follows:

> (B) In a negligence claim brought against a merchant by a person lawfully on the merchant's premises for damages as a result of an injury, death, or loss sustained because of a fall due to a condition existing in or on a merchant's premises, the claimant shall have the burden of proving, in addition to all other elements of his cause of action,[31] all of the following:
> (1) The condition presented an unreasonable risk of harm to the claimant and that risk of harm was reasonably foreseeable.
> (2) The merchant either created or had actual or constructive notice of the condition which caused the damage, prior to the occurrence.
> (3) The merchant failed to exercise reasonable care. In determining reasonable care, the absence of a written or verbal uniform cleanup or safety procedure is insufficient, alone, to prove failure to exercise reasonable care.[32]

Here, La. R.S. 9:2800.6 is applicable to Plaintiff's claim against Dollar General because the alleged injury occurred on the premises of Dollar General. While the parties both additionally cite Louisiana Civil Code article 2317.1, "Louisiana courts, as well as sister federal district courts interpreting Louisiana law, have held that La. R.S. [ ] 9:2800.6 governs a cause of action against merchants for a fall on the premises—to the exclusion of [article] 2317.1."[33] Accordingly, La. R.S. 9:2800.6 governs this action, not Louisiana Civil Code article 2317.1.

---

[30] La. R.S. 9:2800.6(A).
[31] "Though there is some overlapping, these remaining elements are duty, breach, cause in fact, risk and harm within the scope of duty, and actual damages." *White v. Wal-Mart Stores, Inc.*, 97-0393 (La. 9/9/97), 699 So. 2d 1081, 1084.
[32] La. R.S. 9:2800.6(B).
[33] *Guidry v. Murphy Oil USA, Inc.*, No. CV 14-00223-BAJ-SCR, 2015 WL 5177569, at *4 (M.D. La. Sept. 3, 2015) (citing *Gruver v. Kroger Co.,* 54 So.3d 1249, 1252 n.3 (La.Ct.App.), *writ denied,* 62 So.3d 92 (La.2011); *Gray v. Wal–Mart Louisiana, LLC,* No. 1:09–CV–1523, 2011 WL 4551460, at *2 (W.D. La. Sept. 29, 2011) , *aff'd sub nom. Gray v. Wal–Mart Louisiana, L.L.C.,* 484 Fed.Appx. 963 (5th Cir. 2012)).

### C. Arguments and Analysis

In response to Plaintiff's Statement of Facts,[34] Dollar General admits Plaintiff's assertion that "she tripped over a Coca-Cola crate."[35] Nonetheless, Dollar General argues it is entitled to summary judgment primarily because no reasonable juror could find that the crate presented an unreasonable risk of harm as required under 9:2800.6(B)(1). Dollar General also addresses the second and third elements of the Merchant Liability Statute, albeit briefly.

#### i. Whether the Crate Presented an Unreasonable Risk of Harm

The first element under La. R.S. 9:2800.6 requires a plaintiff to establish a condition that presented an unreasonable risk of harm. The mere fact that an accident occurred does not establish that a condition was unreasonably dangerous.[36] To determine whether a condition presents an unreasonable risk of harm, courts "must decide whether the social value and utility of the hazard outweigh, and thus justify, its potential harm to others[.]"[37] In making this determination, Louisiana courts apply a risk-utility balancing test consisting of four factors: "(1) the utility of the complained-of condition; (2) the likelihood and magnitude of harm, including the obviousness and apparentness of the condition; (3) the cost of preventing the harm; and (4) the nature of the plaintiff's activities in terms of social utility or whether the activities were dangerous by nature."[38] The Court considers each factor in turn.

---

[34] Rec. Doc. 41-2.
[35] Rec. Doc. 47-1, ¶ 1.
[36] *Griffin v. Wal-Mart Louisiana, L.L.C.*, No. CIV.A. 14-110-JJB, 2015 WL 4162905, at *4 (M.D. La. July 9, 2015) (citing *Durmon v. Billings,* 873 So.2d 872, 876 (2nd Cir. 2004)).
[37] *Latour v. Steamboats, LLC*, 2023-00027 (La. 10/20/23), 371 So. 3d 1026, 1035 (quoting *Reed v. Wal-Mart Stores, Inc.*, 97-1174 (La. 3/4/98), 708 So.2d 362, 365).
[38] *Latour*, 371 So. 3d at 1036 (citing *Farrell v. Circle K Stores, Inc.*, 2022-00849 (La. 3/17/23), 359 So. 3d 467, 474).

### a. Utility of the Complained-Of Condition

Dollar General argues that the crate had utility because "it holds and displays two-liter soda bottles for sale."[39] However, Dollar General acknowledges that the crate was empty at the time of Plaintiff's alleged fall.[40] Thus, the Court finds the empty crate on the floor had little utility, if any.

### b. Likelihood and Magnitude of Harm

"The likelihood of the harm factor asks the degree to which the condition will likely cause harm. If it is likely to cause harm, that weighs in favor of finding it unreasonably dangerous. If it is unlikely to cause harm, that weighs in favor of it not being unreasonably dangerous."[41] In evaluating this factor, "relevant considerations include the size, context, and location of the condition, as well as the accident history."[42] Additionally, the Louisiana Supreme Court recently clarified that the notion of "open and obvious risks" is included in this part of the risk-utility balancing test.[43] That is, "[t]he more obvious the risk, the less likely it is to cause injury because it will be avoided."[44]

Dollar General argues this factor weighs in its favor. It points out that Plaintiff was not "forced to encounter" the crate because it was "not in the middle of the aisle, but rather off to the side," and assert "the record is undisputed that there was at least 36 inches of clearance (width) in the aisle."[45] It further argues that "Goldman, who preceded [P]laintiff

---

[39] Rec. Doc. 38-2, p. 11.
[40] *Id.* at p. 5.
[41] *Farrell*, 359 So. 3d at 474.
[42] *Latour*, 371 So. 3d at 1036.
[43] *Farrell*, 359 So. 3d at 478.
[44] *Id.* at 474. The *Farrell* court also clarified that "it is inaccurate to profess that a defendant generally does not have a duty to protect against an open an obvious condition." *Id.* at 478. Therefore, the fact that a condition was open and obvious does not operate as a bar to recovery.
[45] Rec. Doc. 38-2, pp. 11–12.

and walked ahead of her, did not trip and saw nothing obstructive."[46] Dollar General concludes by stating: "Considering the crate's size, location and color, which made it apparent to all, anyone who would encounter it would not conclude it presents a likelihood of great harm."[47]

Plaintiff argues that regardless of how many inches of "clearance" there were in the aisle, the crate created a clear likelihood of harm. Plaintiff states, "[t]he table hiding the crate beneath it was placed just around the corner from the cash registers near the front of the Dollar General store, where customers regularly walked."[48] Plaintiff also claims that the crate was only "a few inches tall," and reiterates that it was partially concealed underneath a table.[49]

The Court notes that Dollar General's brief did not contain a single citation to evidence in support of its assertions on this factor, and Plaintiff's contained very few. Thus, the Court is left to rely mainly on the parties' statements of material fact and the evidentiary citations therein. Dollar General relies in part on the deposition testimony of Christina Tisdale ("Tisdale"), another Dollar General employee who did not witness Plaintiff's fall but was in the store at the time. Tisdale testified that, in accordance with a pertinent Dollar General Standard Operating Procedure ("SOP") guideline,[50] there were at least 36 inches of clearance in the aisle where the fall occurred.[51] Although she did not "measure" the clearance width, Tisdale stated she pushed a shopping cart – which is

---

[46] *Id.* at p. 12.
[47] *Id.*
[48] Rec. Doc. 41, p. 13.
[49] *Id.*
[50] Rec. Doc. 56 [SEALED], p. 1. The SOP also requires that floor aisles be kept "clear and uncluttered."
[51] Rec. Doc. 38-7, p. 16.

"about" 36 inches wide – through the isle before Plaintiff's incident.[52] Tisdale described the aisle as "uncluttered."[53]

Plaintiff testified that the crate was underneath a table in the aisle "but sticking out" partially.[54] Plaintiff further testified that the crate was about the size of a legal pad, perhaps slightly longer, and "[i]t wasn't a big, big bulky thing."[55] Plaintiff's testimony is unclear regarding the height of the crate,[56] and no evidence is cited to substantiate Plaintiff's statement in her brief that "the crate was just a few inches tall."[57]

Dollar General suggests that the crate was an open and obvious condition.[58] However, the Court finds that many of Dollar General's points cut against this suggestion. For example, Dollar General asserts, and Plaintiff does not dispute, that Goldman, who walked ahead of Plaintiff, "did not walk around anything;" that the crate "was not in the middle of the aisle;" and that Goldman "did not see anything that might cause a customer to trip."[59] None these assertions support the notion that "the condition was apparent to all who may encounter it;"[60] in fact, they largely support the opposite conclusion.

As Dollar General points out, Plaintiff made clear that she only saw the crate after she fell and did not see it before.[61] Plaintiff further testified that she did not know how much of the crate was protruding from underneath the table at the time of the incident, or

---

[52] *Id.* at pp. 17–18.
[53] *Id.* at p. 18.
[54] Rec. Doc. 41-4, p. 51.
[55] *Id.* at p. 84.
[56] *Id.* at pp. 79–80. The height of the crate was discussed using points of reference with Plaintiff's hands, but those discussions were not verbally translated into inches or any discernable units of measurement.
[57] Rec. Doc. 41, p. 13.
[58] Rec. Doc. 38-2, pp. 11–12.
[59] Rec. Doc. 38-1, ¶ 6. Plaintiff submitted a "qualified" response to this statement of fact by Dollar General but failed to cite any evidence in doing so (Rec. Doc. 41-3, ¶ 6). Thus, pursuant to Local Rules 56(c) and 56(f) of this Court, these factual assertions are deemed admitted for purposes of this motion.
[60] *Farrell*, 359 So. 3d at 479.
[61] Rec. Doc. 41-4, p. 88.

whether the crate was parallel, perpendicular, or some other orientation in relation to the table.[62] However, this does not entitle Dollar General to summary judgment. Courts do not require a plaintiff to observe the object that caused the fall before the fall occurs.[63]

Overall, Dollar General has not made a strong showing that this factor favors its position. Plaintiff testified that she tripped over an empty crate which was positioned partially underneath a table.[64] The fact that the crate was located within a shopping aisle makes it more likely to cause harm because it is a more "customarily traversed area" than, for example, "the corner of a parking lot."[65] Dollar General points to evidence suggesting there was enough clearance in the aisle for a shopping cart to pass through but fails to explain why this means a low-profile empty crate partially underneath a table toward the edge of the aisle does not pose a likelihood of harm. Further, the fact that Goldman walked ahead of Plaintiff and did not trip on the crate does not mean that the crate did not pose a potential risk; as Plaintiff points out, she may not have followed the exact path that Goldman walked.[66]

### c. Cost of Preventing the Harm

Dollar General does not dispute that the cost of moving the crate was "probably low."[67] However, it argues that the Dollar General employees at the store on the day of

---

[62] *Id.* Plaintiff also included two photographs of the area in her brief (Rec. Doc. 41, p. 6). The Court finds the photographs unhelpful because they do not depict the crate and only show the general area when the fall allegedly occurred.
[63] *See, e.g.*, *Pistorius v. Higbee Louisiana, LLC*, 54,780 (La. App. 2 Cir. 2/8/23), 356 So. 3d 1204, 1211, *writ denied*, 2023-00331 (La. 5/2/23), 359 So. 3d 1290 (Denying summary judgment, even where "[i]t [was] clear that [the plaintiff] never saw the cart as she advanced toward its location. Similarly, [the plaintiff's friend] testified at her deposition that she also never saw the cart until after the trip and fall accident."). *See also Lewis v. Jazz Casino Co., L.L.C.*, 2017-0935 (La. App. 4 Cir. 4/26/18), 245 So. 3d 68, 75, *writ denied*, 2018-0757 (La. 9/21/18), 252 So. 3d 877; *and Zelaya v. Wal-Mart, Inc.*, No. CV 21-2409, 2023 WL 3231081, at *3 (E.D. La. May 3, 2023).
[64] Rec. Doc. 41-4, p. 51.
[65] *Farrell*, 359 So.3d at 474–475.
[66] Rec. Doc. 41, p. 17.
[67] Rec. Doc. 38-2, p. 12.

the incident "were not allowed to touch or move the Coke crates."[68] In support, Dollar General cites Tisdale's deposition testimony where she stated: "We are not allowed to touch [the crate], that's Coke's product. If we were to touch it, we can get in trouble. So we cannot touch it. So wherever Coke put it, that's where it has to stay."[69] Dollar General also cites the testimony of Lance Toussaint ("Toussaint"), a Coca-Cola employee who reportedly delivered Coca-Cola merchandise to the Dollar General store in Addis, Louisiana for multiple years. Toussaint testified that when he dropped product off at the store, he would tell Dollar General employees not to move the Coca-Cola crates.[70]

The Court finds Dollar General's argument irrelevant to the issue of the cost of preventing the harm. The analysis of this factor is simple: there is essentially no cost in moving an empty crate out of the way if it presents a risk of harm.

Even assuming its relevance, there is conflicting evidence regarding Dollar General employees' authorization to move the crate. Specifically, Plaintiff points to the deposition testimony of Dollar General's corporate representative, where the following exchange occurred:

> Q.  All right. The testimony is is that Ms. Lundy tripped over a Coca-Cola pallet or crate, okay? Not a standup-floor display, but a Coca-Coca pallet or crate, all right? If there is a single Coca-Cola pallet or crate on the floor and it is empty and it is not an approved display, can a Dollar General employee touch that Coca-Cola crate or pallet and move it?
> A. Yes, sir, they can move it.[71]

Accordingly, Dollar General has not demonstrated the lack of a genuinely disputed fact regarding this factor.

---

[68] Rec. Doc. 38-1, ¶ 10.
[69] Rec. Doc. 41-6, p. 24.
[70] Rec. Doc. 38-8, p. 4.
[71] Rec. Doc. 41-11, pp. 87–88.

### d. Nature of Plaintiff's Activities

"The last factor of the risk-utility analysis requires consideration of the nature of [the plaintiff's] activities in terms of social utility or whether the activities were dangerous by nature."[72] Here, Plaintiff was in the process of procuring an iPhone charger for purchase. Dollar General argues that this factor weighs in its favor because Plaintiff's activity was *not* dangerous.[73] This is a misinterpretation of the factor; the fact that Plaintiff was not engaged in inherently dangerous activity at the time of her fall weighs in favor of Plaintiff's argument that the crate presented an unreasonable risk of harm.[74] Nonetheless, while the utility of Plaintiff's activity on this occasion "may be important and it is not dangerous in nature, it does not weigh heavily as a consideration in determining an unreasonably dangerous condition."[75]

Considering the above four factors, the Court finds that Dollar General has failed to show the absence of a genuine issue of material fact on the unreasonable-risk-of-harm element. Even accepting as true[76] the assertions that the aisle had 36 inches of clearance and was "uncluttered," there remains a genuine factual dispute as to whether the allegedly partially hidden crate nevertheless created an unreasonable risk of harm. Dollar General also failed to provide any evidence of the size of the crate other than the fact that it was

---

[72] *Latour*, 371 So. 3d at 1038.
[73] Rec. Doc. 38-2, p. 13.
[74] *See, e.g., Perkins v. Sheffield Rentals, Inc.*, No. 23-30313, 2023 WL 6969222, at *2 (5th Cir. Oct. 20, 2023).
[75] *Farrell*, 359 So.3d at 479.
[76] Dollar General asserts the following in its Statement of Facts: "On the morning of the incident, there was 36 inches of clearance in the aisle where the incident occurred. Tisdale had pushed a buggy whose handles were approximately 36 inches wide down that same aisle. It was uncluttered." (Ex. 4, Tisdale Depo p. 88, ll 11-25; p. 89, ll 1-21)." (Rec. Doc. 38-1, ¶ 9). Plaintiff submitted a "qualified" response to this statement of fact but failed to cite any evidence in doing so. (Rec. Doc. 41-3, ¶ 9). Thus, pursuant to Local Rules 56(c) and 56(f) of this Court, the fact is deemed admitted for purposes of this motion.

designed to hold two-liter bottles in two rows of three.[77] Without such pertinent information, Dollar General has failed to establish the circumstances in a way that would support summary judgment on this element.

Dollar General's response to one of Plaintiff's statements of fact regarding the location of the crate highlights the Court's conclusion. Citing her own deposition testimony, Plaintiff asserts: "The empty crate over which Plaintiff tripped was partially hidden under a small folding table with merchandise on top, however, part of the crate protruded into the aisle."[78] Citing the same passage of testimony, Dollar General submitted the following qualified response: "The location of the crate as described was its location after plaintiff tripped. No one saw it before she tripped and therefore no one can testify as to where it was located immediately prior to her fall."[79] This response, coupled with the lack of opposing evidence to contradict Plaintiff's assertion, indicates the existence of an issue of fact regarding whether the crate was an unreasonable tripping hazard.

Dollar General's conclusory argument that the "size, location, and color" of the crate made it obvious and a low risk of harm is mostly unbacked by evidence. Based on the materials in the record, a reasonable trier of fact could conclude that the crate presented an unreasonable risk of harm, and Dollar General failed to meet its summary judgment burden on this element.

---

[77] Rec. Doc. 38-1, ¶ 8.
[78] Rec. Doc. 41-2, ¶ 2.
[79] Rec. Doc. 47-1, ¶ 2.

### ii. Actual or Constructive Notice of the Condition

Under the second element of the Merchant Liability Statute, a plaintiff must establish that "[t]he merchant either created or had actual or constructive notice of the condition which caused the damage, prior to the occurrence."[80] The term "constructive notice" is defined in the statute as follows:

> "Constructive notice" means the claimant has proven that the condition existed for such a period of time that it would have been discovered if the merchant had exercised reasonable care. The presence of an employee of the merchant in the vicinity in which the condition exists does not, alone, constitute constructive notice, unless it is shown that the employee knew, or in the exercise of reasonable care should have known, of the condition.[81]

According to the Louisiana Supreme Court, "[t]hough the time period need not be specific in minutes or hours, constructive notice requires that the claimant prove the condition existed for some time period prior to the fall."[82]

Citing no evidence, Dollar General argues that Plaintiff fails on this element because "[s]omeone shortly before [the incident] could have moved the crate. No one knows this and that is fatal is fatal [sic] to [P]laintiff's case."[83]

Plaintiff relies on sworn deposition testimony in arguing there are issues of fact as to Dollar General's knowledge of the condition. Tisdale testified that she recalled seeing the crate in the same or a nearby location at some point prior to Plaintiff's incident.[84]

---

[80] La. R.S. 9:2800.6(B)(2).
[81] La. R.S. 9:2800.6(C)(1).
[82] *White*, 699 So.2d at 1084-85.
[83] Rec. Doc. 38-2, p. 14.
[84] Rec. Doc. 41-6, pp. 22–23.

Further, Plaintiff testified that after the fall, Goldman told Plaintiff that the crate had been there for at least two days.[85]

Based on the evidence cited by Plaintiff and the lack of evidence cited by Dollar General, the Court finds that genuine issues of fact preclude summary judgment on this element. A reasonable juror could find that the condition was present "for some time period" prior to Plaintiff's fall and that Dollar General knew or should have known of the crate's position. Therefore, Dollar General is not entitled to summary judgment on this element.

### iii. Failure to Exercise Reasonable Care

Under La. R.S. 9:2800.6, "a merchant such as [Dollar General] owes a duty to persons who use its premises to exercise reasonable care to keep its aisles, passageways, and floors in a reasonably safe condition. This duty includes a reasonable effort to keep the premises free of any hazardous conditions which reasonably might give rise to damage."[86] "However, merchants are not insurers of their patrons' safety, and a customer is under a duty to use ordinary care to avoid injury."[87]

Dollar General states the following with respect to the third element of the Merchant Liability Statute:

> The undisputed evidence is that there was at least 3 feet of a clear path, and that conclusion was reinforced by the fact that Goldman safely walked through the area seconds prior the incident. Those facts are indicative of reasonable care and the burden shifts to plaintiff to show genuine and material facts that it was not – an insurmountable burden.[88]

---

[85] Rec. Doc. 38-5, p. 21.
[86] *Mincey v. Rouse's Enterprises, LLC*, 2023-0251 (La. App. 1 Cir. 11/3/23), 378 So. 3d 126, 129 (citing La. R.S. 9:2800.6(A), *and Lewis*, 245 So.3d at 73).
[87] *Short v. RaceTrac Petroleum, Inc.*, 2022-0859 (La. App. 1 Cir. 2/24/23), 361 So. 3d 1051, 1060.
[88] Rec. Doc. 38-2, p. 15.

As the Court has already stated, the assertion that there was a 36-inch width of unobstructed space does not establish that Dollar General is not liable. Further, as the Louisiana Supreme Court has explained, "a patron in a self-service store reasonably assumes that the aisles are clear for passage and focuses on the displayed merchandise, not the pathway."[89] The amount of "clear path" simply does not address the question of whether the crate, which allegedly protruded from underneath a table at the edge of that path, presented an unreasonable risk of harm, or whether Dollar General exercised reasonable care. The same can be said about the fact that Goldman traversed the aisle without incident. Therefore, Dollar General has not established entitlement to summary judgment on the failure-to-exercise-reasonable-care element.

Dollar General also points out, and Plaintiff admits, that Dollar General did not own the crate and did not set up the Coca-Cola displays in its store.[90] But Dollar General fails to explain where this fits into the analysis, other than to say that Plaintiff "cannot prove who had custody and control over the crate."[91] The Court finds the fact that Coca-Cola owned the crate rather than Dollar General immaterial to the merchant liability analysis. Dollar General has a duty under the Merchant Liability Statute "to keep [its] aisles, passageways, and floors in a reasonably safe condition,"[92] and "[t]hat duty includes reasonable effort to keep objects off of the floor that might give rise to a slip [or trip] and fall."[93] Dollar General has cited no law, and the Court has found none, suggesting that a

---

[89] *Perez v. Wal-Mart Stores, Inc.*, 608 So. 2d 1006, 1008 (La. 1992).
[90] Rec. Doc. 38-1, ¶ 11; Rec. Doc. 41-3, ¶ 11.
[91] Rec. Doc. 38-2, p. 7.
[92] La. R.S. 9:2800.6(A).
[93] *Richard v. Wal-Mart Stores, Inc.*, 29,926 (La. App. 2 Cir. 10/31/97), 702 So. 2d 79, 83 (quoting *Kavlich v. Kramer*, 315 So. 2d 282, 284 (La. 1975)).

plaintiff must show that the merchant was the owner of the object that the plaintiff tripped over inside the merchant's store.

### III.    CONCLUSION

For the reasons set forth above, the *Motion for Summary Judgment*[94] filed by Defendants DG Louisiana, LLC, and Dolgencorp, LLC, is DENIED.

**IT IS SO ORDERED.**

Baton Rouge, Louisiana, this 18th day of September, 2024.

_____
**SHELLY D. DICK
CHIEF DISTRICT JUDGE
MIDDLE DISTRICT OF LOUISIANA**

---

[94] Rec. Doc. 38.